# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-01146-SCT

*DAVID E. SAUNDERS*

*v.*

*NATIONAL COLLEGIATE ATHLETIC ASSOCIATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/17/2020 |
| TRIAL JUDGE: | HON. GRADY FRANKLIN TOLLISON, III |
| TRIAL COURT ATTORNEYS: | JIM WAIDE |
| | WAYNE E. FERRELL, JR. |
| | J. CAL MAYO, JR. |
| | SARAH KATHERINE EMBRY |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JIM WAIDE |
| | WAYNE E. FERRELL, JR. |
| ATTORNEYS FOR APPELLEE: | J. CAL MAYO, JR. |
| | JOHN DICKSON MAYO |
| | SARAH KATHERINE EMBRY |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 12/15/2022 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     The trial court dismissed David Saunders's claims against the National Collegiate Athletic Association (NCAA) based on judicial estoppel because Saunders did not list these claims in his prior Chapter 7 bankruptcy. We find the trial court erred for two reasons.

¶2.     First, Saunders's claims for declaratory relief are aimed solely at his ability to earn future income. This future income is not part of his Chapter 7 bankruptcy estate. So

Saunders had no duty to disclose his declaratory-relief claim to the bankruptcy trustee. Thus, the trial judge erred by estopping Saunders from pursuing this type of declaratory relief.

¶3. Second, regarding Saunders's claims for money damages, we hold the trial judge erred due to an intervening opinion—namely, ***Jones v. Alcorn State University***, 337 So. 3d 1062 (Miss. 2022). The ***Jones*** special concurrence, joined by a majority of this Court, clarified that the application of judicial estoppel is a fact-specific inquiry that *must* take into account the totality of the circumstances—including how the bankruptcy court has dealt with the omission.[1] Thus, it was error for the trial court to *presume* Saunders should be estopped based on his mere knowledge of the facts giving rise to his claims against the NCAA, coupled with his failure to list these claims on his bankruptcy schedule.

¶4. Based on these two errors, we reverse and remand.

**Background Facts & Procedural History**

**I.      NCAA Investigations and Show-Cause Directives**

¶5. Saunders's career centered on college football. Until December 2010, Saunders served as football operations coordinator at the University of Mississippi. Then, from January 2011 to October 2014, Saunders worked as an assistant football coach for the University of Louisiana. Both universities are members of the NCAA.[2]

---

[1] ***Jones***, 337 So. 2d at 1074-77 (Maxwell, J., specially concurring) (Justice Maxwell's special concurrence was joined by Chief Justice Randolph and Justices Coleman, Beam, and Chamberlin. Justice Griffis joined the opinion in part.).

[2] The NCAA is a private organization that governs athletic competition between member colleges and universities. To be part of the NCAA, member schools agree to abide by and enforce NCAA rules. To enforce its rules, the NCAA has a Committee on Infractions that makes factual determinations, concludes whether NCAA violations have

¶6.    Based on Saunders's alleged rule violations while at each institution, the NCAA conducted separate investigations and enforcement proceedings against both schools. In the first proceedings, the NCAA concluded Saunders had violated NCAA rules while at Louisiana. As punishment, the NCAA issued a show-cause directive to any NCAA member institution that may want to employ Saunders in an athletics position from January 2016 to January 2024.

¶7.    The NCAA then pursued the Mississippi-based allegations. Saunders retained an attorney to represent him in these proceedings. After receiving notice of the Mississippi allegations, Saunders's attorney wrote to the NCAA, explaining that the NCAA had exhausted Saunders's personal resources. And the attorney insisted this financial strain prevented Saunders from traveling to the NCAA hearing in Kentucky to defend himself personally. In this same letter, Saunders's counsel expressed his "personal and professional opinion [that] the actions of the NCAA . . . in the conduct of this investigations and in the leveling and pursuit of charges filed against Saunders" both breached the "NCAA's implied contractual obligation of good faith and fair dealing" and also potentially constituted "tortious interference with Saunders' contract rights under his contracts with the University of Mississippi and/or other third parties."

¶8.    The NCAA similarly concluded that Saunders had violated NCAA rules while at Ole Miss. Consequently, in December 2017, the NCAA tacked on eight more years to its prior

occurred, and potentially imposes penalties on a member institution found to have violated the rules. *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 183, 109 S. Ct. 454, 102 L. Ed. 2d 469 (1988).

3

show-cause directive, extending it through January 2032. After this second show-cause directive, Saunders and his attorney discussed suing the NCAA. But his attorney advised him that to launch a legal challenge against an organization as large and powerful as the NCAA would cost a million dollars. So Saunders did not pursue a lawsuit.

¶9. Three months later, in March 2018, Saunders filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Florida. Saunders averred in his bankruptcy petition that he had no claims against third parties. Two months later, he amended his bankruptcy schedule. Again, he did not identify any potential claim against the NCAA. Saunders received a bankruptcy discharge in July 2018.

## II. Saunders's Lawsuit Against the NCAA

¶10. Almost two years later, on April 22, 2020, Saunders—represented by different counsel—sued the NCAA in the Lafayette County Circuit Court. According to Saunders, it was not until another football coach sued the NCAA, and made it past the summary judgment stage, that Saunders believed he had an actual shot at taking on the NCAA in court. In June 2020, before any responsive pleading was filed, Saunders amended his complaint. *See* Miss. R. Civ. P. 15(a). In the amended complaint, Saunders asserted claims for negligence, malicious interference with future employment, denial of due process under the Mississippi Constitution, and "usurpation of judicial function of the State." The amended complaint asked for (1) compensatory damages—actual damages for lost income, mental anxiety, stress, and damages to reputation; (2) punitive damages to deter the NCAA from future intentional and grossly negligent unlawful acts; (3) declaratory relief from the show-cause restriction on

4

any NCAA member institution seeking to employ Saunders in an athletics position from 2024 to 2032; and (4) attorneys' fees and expenses.

¶11. On July 1, 2020, the NCAA simultaneously filed its answer and a motion for summary judgment. In both, it asserted Saunders's claims were barred by the doctrine of judicial estoppel because Saunders had not disclosed these claims against the NCAA in his 2018 bankruptcy proceedings.

¶12. Two weeks later, on July 13, 2020, the bankruptcy judge granted the United States Trustee's motion to reopen Saunders's bankruptcy case and appoint a trustee. The next month, on the same day Saunders filed a motion for leave to file second amended complaint, the appointed bankruptcy trustee filed a motion to intervene. In this motion, the bankruptcy trustee limited her request to Saunders's monetary claims, and she abandoned any claim of the bankruptcy estate on Saunders's claims for declaratory relief.

¶13. The circuit court held a hearing on both the NCAA's motion for summary judgment and the bankruptcy trustee's motion to intervene on September 1, 2020. The court ruled that Saunders's claims against the NCAA belonged to Saunders's bankruptcy estate. Thus, the bankruptcy trustee was substituted as the real party in interest and plaintiff in the action. Further, while judicial estoppel did not bar the trustee from pursuing these claims for the benefit of the bankruptcy estate, Saunders himself was barred by judicial estoppel from pursuing his claims against the NCAA, including the declaratory-relief claim abandoned by the bankruptcy trustee. Should the trustee prevail, the estate could only recover from the NCAA the amount Saunders owed his creditors. Saunders could not recover any awarded

5

damages above the amount he owed.

¶14.    Consequently, the court granted the NCAA's motion for summary judgment as to all of Saunders's claims, including his claims for damages and for declaratory relief, against the NCAA.  The court dismissed all of Saunders's claims with prejudice.[3]

¶15.    The trial court certified as final the summary judgment dismissing Saunders as a party. *See* Miss. R. Civ. P. 54(b).  Saunders timely appealed.  On appeal, he argues the trial court erred (1) by estopping him from seeking declaratory relief to get out from under the 2024–2032 show-cause directive and (2) by finding that judicial estoppel required the bankruptcy trustee to pay back to the NCAA any money damages she recovers in excess of what Saunders owed his creditors.

**Discussion**

**I.    Claim for Declaratory Relief**

¶16.    We begin with Saunders's claim for declaratory relief.  The judge judicially estopped Saunders from seeking declaratory and injunctive relief aimed at lifting the *future* restrictions on his *future* employment.  This was error.

¶17.    Saunders's claim for declaratory relief focused on the show-cause notice to potential employers from 2024–2032—something that added *zero value* to the 2017 Chapter 7 bankruptcy estate.  The reason future employment added no value to the 2017 Chapter 7 bankruptcy estate is because any postpetition wages earned by a Chapter 7 debtor do not belong to the bankruptcy estate. ***Harris v. Viegelahn***, 575 U.S. 510, 517, 135 S. Ct. 1829,

---

[3] The trial court also denied Saunders's motion for leave to file a second amended complaint.  Saunders does not appeal this aspect of the trial court's ruling.

6

1837, 191 L. Ed. 2d 783 (2015).

¶18.    Although unpublished, *Edwards v. Huntington Ingalls, Inc.*, No. 1:06cv784HSO-JMR, 2011 WL 3891872, at *8 (S.D. Miss. Aug. 29, 2011), provides helpful guidance on this issue.   The district court in *Edwards* agreed with the Middle District of Alabama that, when evaluating declaratory and injunctive claims, "the 'key is to examine the demands made by the Plaintiff and then determine if success on the merits would result in any value being added to the debtor Plaintiff's estate.'"   *Edwards*, 2011 WL 3891872, at *9 (quoting *Lett v. Reliable Ruskin*, No. 1:05cv479-WHA, 2006 WL 2056582, at *7 (M.D. Ala. July 24, 2006)).

¶19.    The debtor in *Edwards* had filed for Chapter 13 bankruptcy reorganization.   In contrast to a Chapter 7 bankruptcy liquidation, in a Chapter 13 bankruptcy reorganization income earned postpetition becomes part of the reorganization plan to pay off creditors.   The district court in *Edwards* concluded that the declaratory and injunctive relief the plaintiff sought could have led to retroactive salary adjustments and better retirement benefits and thus added value to the Chapter 13 bankruptcy estate.   *Id.*   Hence, the court applied judicial estoppel to that claim.   *Id.*

¶20.    But *Edwards* acknowledged that debtors should not be estopped from pursuing injunctive-relief claims that would *not* have added value to the bankruptcy estate.   *Edwards*, 2011 WL 3891872, at **8-9.   That is what happened in *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), *overruled on other grounds by Slater v. U.S. Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017).   *Burnes* involved a Chapter 7 debtor.   And "[i]n this situation, knowledge that the debtor was pursuing a discrimination claim seeking injunctive relief that

7

*offered no monetary value to the estate . . .* was of no consequence to the trustee or the creditors." ***Id.*** at 1289 (emphasis added). So the debtor *should* be permitted to pursue his claims for injunctive relief. ***Id.***

¶21. Here, as in ***Burnes***, Saunders's claims for declaratory and injunctive relief offered nothing of value and thus was of no consequence to the Chapter 7 bankruptcy trustee. So it was error to judicially estop Saunders from pursuing these causes of action. We reverse the grant of summary judgment to the NCAA on Saunders's claims for declaratory relief and remand these claims to the trial court for further proceedings.

## II. Claims for Monetary Damages

¶22. By contrast, Saunders's monetary claims are part of the Chapter 7 bankruptcy estate because they are based, at least in part, on the NCAA's actions before Saunders filed for bankruptcy. This is why the bankruptcy court permitted the reopening of the Chapter 7 bankruptcy case so that the trustee could pursue these claims the estate's behalf. This is also why the trustee sought intervention to join Saunders in pursuing his monetary claims against the NCAA pending in the Lafayette County Circuit Court. While the trial court denied summary judgment as to the bankruptcy trustee, the court granted the NCAA summary judgment against Saunders personally, judicially estopping him from recovering damages over and above what his bankruptcy estate owed his creditors. *See **Kirk v. Pope***, 973 So. 2d 981, 992 (Miss. 2007).

¶23. Due to our intervening decision in ***Jones***, we reverse the estoppel against Saunders and the resulting summary judgment.

8

¶24. Judicial estoppel has three elements—an asserted legal position inconsistent with one previously taken during litigation, a court's acceptance of that previous position, and no inadvertence in taking the inconsistent position. *Clark v. Neese*, 131 So. 3d 556, 560 (Miss. 2013) (citing *Kirk*, 973 So. 2d at 991). In this case, the first two requirements are not at issue. Saunders has taken an inconsistent position—he told the Florida bankruptcy court he had no claim against the NCAA. And the Florida bankruptcy court accepted the previous position and granted him a bankruptcy discharge. The sole question is whether the nondisclosure of his monetary claims to the bankruptcy court was *inadvertent*.

¶25. Generally, "[a] debtor's non disclosure is '"inadvertent" only when the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'" *Kirk*, 973 So. 2d at 991 (quoting *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 210 (5th Cir. 1999)). Relying on *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598 (5th Cir. 2005), the Mississippi Court of Appeals has stated that "a debtor is deemed to have had 'knowledge' of her claim so long as she was aware 'of the facts giving rise to it.'" *Rogers v. Gulfside Casino P'ship*, 206 So. 3d 1274, 1280 (Miss. Ct. App. 2016) (quoting *Jethroe*, 412 F.3d at 601). And this Court has cited *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012), to suggest a debtor's motive to conceal is "self-evident" when a debtor fails to disclose a claim or potential claim. *Adams v. Graceland Care Ctr. of Oxford, LLC*, 208 So. 3d 575, 581 (Miss. Ct. App. 2017) (quoting *Love*, 677 F.3d at 262). Expressly referencing *Rogers*, the trial court here deemed that, because Saunders had knowledge of the facts giving rise to the later-filed claims against the NCAA, he had knowledge of the claims

9

themselves. And because Saunders did not disclose them on his bankruptcy schedule, the trial court declared Saunders's motive to conceal these claims from the bankruptcy estate to be "self-evident."

¶26. It is clear from the bench ruling these two inferences were prominent in the trial judge's conclusion that Saunders's nondisclosure of potential monetary damage claims against the NCAA was not inadvertent and warranted application of judicial estoppel. But this Court recently rejected any application of Fifth Circuit Court of Appeals judicial-estoppel language that suggested the noninadvertence required for judicial estoppel to apply can be merely inferred or presumed.

¶27. In *Jones*, a majority of this Court joined a special concurrence that explained that *Rogers* and *Adams* had "too narrowly cited Fifth Circuit precedent to suggest that anytime a debtor omits a claim or potential claim from his or her schedule, it must be for nefarious reasons, and judicial estoppel should be applied—with no further questions from the court." *Jones*, 337 So. 3d at 1076, 1076 n.6. A majority of this court agreed that, rather than rely on inferences, trial courts should consider the specific facts and circumstances to determine if judicial estoppel applies. *Id.* (Maxwell, J., specially concurring, joined by Randolph, C.J., Coleman, Beam and Chamberlin, JJ. Griffis, J., joined this opinion in part).

¶28. This is because judicial estoppel is an equitable doctrine. *In re Coastal Plains, Inc.*, 179 F.3d at 205. And "[e]quity eschews mechanical rules . . . ." *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S. Ct. 582, 90 L. Ed. 743 (1946). Thus, instead of strictly applying presumptions, courts better promote the equitable principles of judicial estoppel by applying

10

caution and considering whether the particular circumstances warrant judicial estoppel.

¶29.    Common sense tells us that in obvious cases, like a car wreck or slip-and-fall tort claim, knowledge of the facts giving rise to a claim may very well be sufficient for a layperson to have knowledge of a potential tort claim. *E.g.*, **Superior Crewboats, Inc. v. Primary P&I Underwriters (In re Superior Crewboats, Inc.)**, 374 F.3d 330, 333 (5th Cir. 2004) (debtor did not disclose a claim against a shipowner based on an injury the debtor sustained while disembarking the ship). But in other instances, knowledge of facts giving rise to the claim may or may not, depending on the circumstances, be sufficient proof that the debtor *intentionally* misled the court.[4]  Just because one knows that something wrong or unusual has happened to him or her does not necessarily mean that person is apprised that a viable legal claim exists.[5]  It is often hard enough for lawyers to discern whether a wrong is actionable. *E.g.*, **Righetti v. Wyeth, Inc. (In re Diet Drugs)**, Nos. 07-20144, 07-01766, 2008 WL 5215959 (E.D. Pa. Dec. 15, 2008) (finding no bad faith when the debtor did not disclose a claim against a pharmaceutical manufacturer because the attorney handling the class action told her that she did not qualify to be a class member). For these reasons,

---

[4] *E.g.*, **Martineau v. Weir**, 934 F.3d 385, 394 (4th Cir. 2019) (holding plaintiff's knowledge of the facts—her apartment neighbor stabbed her and tried to kidnap her—did not lead to an inference of bad-faith nondisclosure of a claim against the apartment owners because, at the time she filed bankruptcy, plaintiff did not know the owners were also her assailant's relatives and caretakers).

[5] *E.g.*, **Stallings v. Hussmann Corp.**, 447 F.3d 1041, 1049 (8th Cir. 2006) (holding that it could not be said that the debtor "clearly knew at the time his bankruptcy was pending that he had a *viable* claim" against his employer because, even though the debtor had knowledge of the facts giving rise to his Family and Medical Leave Act violation claim, he had been given an adverse ruling by the United States Department of Labor, which had found he had been properly terminated).

11

whether a debtor intended to conceal his claim requires considering more than simply just whether the debtor failed to disclose a claim. *Jones*, 337 So. 3d at 1075. A court must look at all the facts and circumstances, including any subsequent actions by the bankruptcy court that might help in determining if the debtor's nondisclosure was purposeful. *Id.*

¶30. As discussed in *Jones*, a Fifth Circuit panel recently clarified that this is the actual Fifth Circuit approach. *Id.* at 1076 (discussing *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 766 F. App'x 38, 43 n.3 (5th Cir. 2019)). The panel in *Tangipahoa Parish School Board* rejected criticism that—in contrast to other federal circuits—Fifth Circuit courts could simply infer that a plaintiff who omitted a claim on his bankruptcy schedule necessarily intended to manipulate the judicial system. *Tangipahoa Par. Sch. Bd.*, 766 F. App'x at 43 n.3. Instead, the panel emphasized Fifth Circuit "caselaw has *always* required courts to consider the facts before them in determining whether a debtor acted inadvertently." *Id.* And in *Jones*, we brought our law back in realignment with the Fifth Circuit's approach.

¶31. For pages, Justice Coleman's partial dissent insists *Jones* was not an intervening decision and represents no change in our law. But *Jones* undisputedly snuffed out the presumption-based judicial estoppel method, giving much needed clarification to our bench and bar that the application of judicial estoppel *must* be facts-and-circumstances based—not merely presumption based. And here, the trial judge did not have the benefit of our *Jones* decision. Despite Justice Coleman's protestations, there is nothing unusual in reversing the trial court's ruling, particularly here where we are reversing for other errors.

¶32. Consequently, we reverse the judge's application of judicial estoppel to Saunders's

claims for money damages and remand for proceedings consistent with this opinion.

¶33. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. COLEMAN, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**COLEMAN, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶34. The trial judge committed no error of law in the case *sub judice*. The majority reverses the trial judge's decision for the way the majority claims he considered the evidence—not the way the trial judge applied the law—even though the majority claims it reverses him for errors of law. My dispute with the majority is twofold. First, what the majority characterizes as errors of law are not errors of any kind but, if they were, would be errors of fact. Second, as seen from comparing the specially concurring opinion in *Jones v. Alcorn State University*, 337 So. 3d 1062 (Miss. 2022) (Maxwell, J., specially concurring), to the majority opinion of the Court here, the concurring opinion did not so change the law of judicial estoppel in Mississippi as to create any potential errors of law on the part of the trial judge here. Accordingly, and with respect, I dissent in part.

¶35. For the sake of clarification of my position, the majority decides two issues in today's case. I concur with the majority that the trial court's application of the doctrine of judicial estoppel to Saunders's claims for injunctive and nonmonetary relief, which would not have been part of the bankruptcy estate, must be reversed. I dissent from the majority's decision to reverse the trial court's application of judicial estoppel to those claims made in Saunders's

13

complaint for money damages that arose from events that preceded his filing for bankruptcy.

¶36.   It is undisputed that Saunders knew of his potential claim against the National Collegiate Athletic Association (NCAA) even before the NCAA Committee on Infractions met on September 11, 2017.  In a September 7, 2017, letter from Saunders's then-attorney Richard Phillips to the assistant director of enforcement for the NCAA, Phillips wrote as follows:

> In my personal and professional opinion, the actions of NCAA through certain of its employees, officers and/or other representatives in the conduct of this investigation and in the leveling and pursuit of the charges filed against Mr. Saunders in this matter constitute both (a) a breach of NCAA's implied contractual obligation of good faith fair dealing with Coach Saunders in this matter and (b) potentially actionable tortious interference with Mr. Saunders'[s] contract rights under his contracts with the University of Mississippi and/or other third parties.

The above-quoted letter was attached by Saunders to his amended complaint.  At the summary judgment motion hearing, Saunders testified that Attorney Phillips told him that pursuing his potential claim would be difficult and expensive.  He stated, when asked by his new attorney, "I did not have a claim."  He never testified, however, that his potential claim had no value.  Rather, he testified that it would be difficult and expensive to pursue.  On cross-examination, he again testified that he did not pursue the claim due to difficulty and expense rather than an absence of value in the claim.  To the extent that the majority writes that the trial judge had no basis for finding Saunders had reason to know of his claim, Maj. Op. ¶ 25, the record shows otherwise.

¶37.   Saunders also filed an affidavit in response to the NCAA's motion for summary judgment in which he averred that he first learned he might have a claim when he read that

14

another former coach settled his claim against the NCAA in July 2019. He contacted Attorney Jim Waide, who told him he might have a claim. His affidavit further claimed that "My failure to list a claim against Defendant was inadvertent."

¶38. The trial judge had Saunders's affidavit, and he listened to Saunders's live testimony. After doing so, he made findings of fact on the record. As to the events leading up to his finding that the doctrine of judicial estoppel applied, the trial judge found the following:

- The NCAA issued its sanctions of Saunders on December 1, 2017.

- Saunders sought bankruptcy in March 2018, and a United States bankruptcy court sitting in Florida discharged him from bankruptcy in July 2018.

- On April 22, 2020, Saunders filed his complaint in the instant case.

- On July 1, 2020, the NCAA filed its motion for summary judgment, raising the issue of judicial estoppel based on Saunders's failure to report his claim as part of his bankruptcy estate.

- Twelve days later, on July 13, 2020, the bankruptcy court entered an order reopening Saunders's bankruptcy case.

¶39. In summary, the trial judge had before him more than sufficient evidence to support the application of judicial estoppel. Before finally reporting his claim as part of his bankruptcy estate, Saunders knew he had a claim but decided not to pursue it because of expense and difficulty rather than because the claim lacked value, Saunders found out from a news article that another coach had settled like claims against the NCAA, Saunders's new attorney told him his claim might have value and be worth pursuing, and Saunders filed his complaint against the NCAA. Despite knowing for years of his potential claim, Saunders did nothing to report his potential claim to the bankruptcy court until after the NCAA filed its

15

motion for summary judgment, forcing him to do so. Directly contradicting the majority's assertion that the trial judge did not take into account how the bankruptcy court dealt with Saunders's omission, the trial judge noted the timing of Saunders's attempt to reopen his bankruptcy estate while ruling from the bench and incorporated his bench ruling into the order granting the NCAA's motion for summary judgment.

## DISCUSSION

¶40. "Judicial estoppel operates to protect the integrity of the judicial system."*Adams v. Graceland Care Ctr. of Oxford, LLC*, 208 So. 3d 575,580 (Miss. 2017) (citing *Gibson v. Williams, Williams & Montgomery, P.A.*, 186 So. 3d 836, 847 (Miss. 2016)). "[The] judicial estoppel [doctrine] arises when one party asserts a position contrary to one taken in a prior litigation *Clark v. Neese*, 131 So. 3d 556, 560 (Miss. 2013), and "precludes a party from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in the litigation." *Id.* (internal quotation mark omitted) *Richardson v. Cornes (In re Est. of Richardson)*, 903 So. 2d 51, 56 (Miss. 2005)); *Gibson*, 186 So. 3d at 846 (footnote omitted)

¶41. In Mississippi judicial estoppel has three elements. It applies to bar a party from taking a position in litigation when (1) the party earlier took an inconsistent position during litigation, (2) a court accepted the previous, inconsistent position, and (3) the party's taking of the inconsistent position was not inadvertent. *Adams*, 208 So. 3d at 580 (quoting *Clark*, 131 So. 3d at 560). In *Clark*, we explicitly eliminated the requirement that the parties in the present litigation be the same as the parties in the litigation in which the inconsistent position

16

was taken. *Clark*, 131 So. 3d at 561-62.

¶42.     As the trial judge found, Saunders's failure to disclose the claim continued after he filed his complaint and until the NCAA filed its motion for summary judgment. "[A]llowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them." *Love v. Tyson Foods Inc.*, 677 F.3d 258, 262 (second alteration in original) (internal quotation marks omitted) (quoting *In re Superior Crewboats, Inc.*, 374 F.3d 330 (5th Cir. 2004)).  Saunders backed up and reopened his bankruptcy case only after the NCAA challenged his failure to do so.  The trial judge's consideration of all of the facts outlined above and heard by him at the hearing on the NCAA's summary judgment motion led him to find the doctrine of judicial estoppel applicable.

> **I.      The errors of which the majority complains are not errors of law. If errors at all, they pertain to how the trial judge weighed the evidence when applying it to the elements of judicial estoppel.**

¶43.     Saunders does not argue, nor does any judge on the Court opine, that the trial judge erred in his characterization of the three elements of judicial estoppel.  Instead, the majority points to the way the trial judge weighed the evidence against the elements.

¶44.     The majority claims the following errors of law: (1) the trial judge erred by presuming judicial estoppel should apply based on his mere knowledge of the facts giving rise to his claims against the NCAA, coupled with his failure to list these claims on his bankruptcy schedule and (2) failing to take into account the totality of the circumstances including how

17

the bankruptcy court handled the reopening of Saunders's bankruptcy. Maj. Op. ¶ 3. It is not accurate to write that the trial judge committed an error of law by relying only on the facts giving rise to Saunders's claims against the NCAA and his failure to list the claims on his bankruptcy schedule. But the record shows, as already described above, that the trial court heard significant evidence of Saunders's continued failure to report the claim even after he became aware of its potential value. The majority leaves such evidence out of the equation when it writes that the trial judge only relied on evidence of the facts giving rise to the claims and the failure to report.

¶45. The majority does identify one specific alleged failure by the trial court, *i.e.*, the failure to consider the bankruptcy court's handling of the matter after Saunders reopened his bankruptcy. But the majority faces two problems with its claim. First, it is not true. Second, the Court in *Jones*, explicitly held that the federal bankruptcy court's adoption of a modified plan following the late reporting of a claim does not prevent the application of judicial estoppel by a trial court. *Jones*, 337 So. 3d at 1068.

¶46. The hearing on the motion for summary judgment took place on September 1, 2020. Before the hearing, Saunders's response to the NCAA's motion for summary judgment informed the trial judge of the particulars regarding the reopening of Saunders's bankruptcy and attached the July 13, 2020, order reopening the bankruptcy estate and notice of appointment of a bankruptcy trustee.

¶47. During the hearing, counsel for Saunders informed the trial court of the bankruptcy trustee's handling of the claim after Saunders finally reported it. He informed the court that

18

the bankruptcy court had abandoned the claims for declaratory relief. The trial judge confirmed that, with the approval of the bankruptcy judge, the bankruptcy trustee had retained Saunders's attorney to represent the estate.

¶48. The circuit judge entered a single order disposing of the NCAA's motion for summary judgment and the bankruptcy trustee's motion to intervene. Indeed, both motions were heard with arguments and evidence supporting them during the same September 1, 2020, hearing.

¶49. The above-recited facts from the record demonstrate, beyond the reach of meaningful dispute, that the facts surrounding the bankruptcy court's handling of the reopening of Saunders's bankruptcy estate were before the trial judge when he applied the facts of the case to the elements of judicial estoppel. The trial court's bench ruling just as clearly demonstrates that he considered them. He noted the date on which the bankruptcy court reopened the case, and he noted that the bankruptcy trustee retained Saunders's counsel to also represent the estate. When considering the second judicial estoppel element, *i.e.*, whether the bankruptcy court accepted Saunders's prior, inconsistent position, the circuit judge again discussed both the initial bankruptcy and the events in bankruptcy court following the reopening of the Saunders's case there.

II. **The concurring opinion in *Jones* did not announce any changes in the law that support the majority's holding that based upon it the trial judge committed errors of law.**

¶50. During his consideration of the third element, *i.e.*, whether Saunders's inconsistent positions were not inadvertent, the trial judge did discuss standing Mississippi law to the effect that, as the trial judge put it,

19

Applicable case law stated that the motivation [to conceal a claim from bankruptcy] sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the Bankruptcy Court. Motivation in this context is self-evident because of potential financial benefit resulting from non-disclosure. I think that's self-evident in this case.

¶51. The above quote, applied by the trial judge as part but not as the whole of his consideration of the third judicial estoppel element, is wholly consistent with Mississippi law before and after *Jones*. It is, importantly, an overstatement to write that the trial judge based his entire decision on the consideration of the evidence of motive.

¶52. In *Jones*, we reaffirmed that, "A debtor's non disclosure is inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Jones*, 337 So. 3d at 1071 (¶ 34) (internal quotation marks omitted) (quoting *Kirk v. Pope*, 973 So. 2d 981, 991 (¶ 35) (Miss. 2007)). In *Jones*, we further reaffirmed that, "Allowing the debtor to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them." *Jones*, 337 So. 3d at 1069 (¶ 22) (internal quotation marks omitted) (quoting *Adams*, 208 So. 3d at 581 (¶ 16)). The trial judge's finding in the instant case that Saunders's motivation for concealing his claim was self-evident because of the potential economic benefit to him, is wholly consistent with *Jones* and the cases that preceded it.

¶53. The majority's reasoning, that the concurring opinion in *Jones*, joined by five members of the Court that also concurred in the *Jones* majority, somehow changed the law to something other than that set forth in the *Jones* majority is unsound. The majority's

20

assertion that the concurring opinion in *Jones* now requires, as a matter of law, a trial court to consider the actions of the bankruptcy court following reopening is not only unsupported by the text of the concurring opinion itself, but is, as discussed above, contrary to the *Jones* majority. The majority relies on the following paragraph from the concurring opinion in *Jones*:

> If this is really so, and if the Bias panel is correct, then a court may not mechanically infer bad motive in every circumstance where a debtor does not disclose a claim on his bankruptcy schedule. In this respect, in Mississippi, we have too narrowly cited Fifth Circuit precedent to *suggest* that anytime a debtor omits a claim or potential claim from his or her schedule, it must be for nefarious reasons, and judicial estoppel should be applied—with no further questions from the court.

*Jones*, 337 So. 3d at 1076 (¶ 55) (Maxwell, J., specially concurring) (emphasis added).

Footnote 6, found at the end of the above-quoted paragraph, reads as follows:

> For example, our Court of Appeals, quoting the Fifth Circuit, has stated that "a debtor is deemed to have had 'knowledge' of her claim so long as she was aware 'of the facts giving rise to it.'" *Rogers v. Gulfside Casino P'ship*, 206 So. 3d 1274, 1280 (Miss. Ct. App. 2016) (quoting *Jethroe v. Omnova Sols.*, Inc., 412 F.3d 598, 600 (5th Cir. 2005). And this Court has cited *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012), for the proposition that the bad-motive sub-element is "self-evident" when a debtor fails to disclose a claim or potential claim. *Adams*, 208 So. 3d at 581.

*Id.* at 1076 n.6. I joined the concurring opinion in *Jones* in part because I agree that the language from our earlier cases suggest an improper, automatic approach. They do not, however, set such an approach as law. Had the concurring opinion characterized the earlier cases as mandating such an approach, I would not have been able to fully join it and, presumably, neither would the other justices who also fully concurred in the *Jones* majority that continues to favorably cite the earlier cases. The majority characterizes the effect of the

21

concurring opinion from *Jones* as clarifying. *Clarifying* is not the same thing as changing despite the majority's interchangeable use of the two words. Maj. Op. ¶ 31. Nevertheless, despite being unable to identify a real and specific *change* in the law of which the trial judge ran afoul, the majority reverses.

> **III.** **The trial court clearly considered the totality of the circumstances, which has always been the standard under Mississippi's law on judicial estoppel.**

¶54. It has never been the case under our precedent that "anytime a debtor omits a claim or potential claim from his or her schedule" the doctrine of judicial estoppel must apply. Maj. Op. ¶ 27 (quoting *Jones*, 337 So. 3d at 1076). As we wrote in *Adams*, a trial court must consider the facts surrounding a bankruptcy debtor's claim of inadvertence in failing to list a claim on bankruptcy schedules in order to determine whether the debtor lacked knowledge of the claim or had no motive for concealing the claim. *Adams*, 208 So. 3d at 580 (¶ 14). In *Jones* itself, the majority, in reaching its holding, considered numerous facts surrounding Jones's failure to list his claims. *Jones*, 337 So. 3d at 1069-70 (¶¶ 23-25). The *Jones* Court considered far more than the single fact that Jones failed to report his claim to the bankruptcy court, which, in and of itself, belies the concurring opinion's assertion that, in Mississippi, the application of judicial estoppel has become automatic in the context of the failure to list a claim on bankruptcy schedules.

¶55. The consideration of the judicial estoppel doctrine has always been fact intensive. In *Adams* we wrote as follows:

> The circuit court heard arguments on the application of judicial estoppel to the present case, and it concluded that Adams's failure to inform the

22

bankruptcy court of her cause of action was not inadvertent. The circuit court explained that, *based on Adams's own testimony and affidavit*, "she had knowledge of the facts supporting her cause of action prior to the discharge of her Chapter 13 proceeding." The circuit court had all of the contradictory evidence in front of it regarding Adams's claims that her failure to amend her bankruptcy schedules was unintentional, due to a lack of knowledge of the law, and ultimately, in her opinion, inadvertent. *Weighing on the other side* was the bankruptcy court's holding that Adams had a continuing duty to update her bankruptcy schedules, that Adams began investigating a claim about her mother's care years before her mother died and suit was filed, that Adams amended her bankruptcy schedules only after Graceland filed its motion to dismiss; and that Adams is the sole beneficiary of her mother and the suit.

In looking at the elements of judicial estoppel *and the facts as presented to the circuit court*, it is evident to the Court that the circuit court did not err in finding Adams judicially estopped from bringing her suit. First, the bankruptcy court's holding that Adams had a continuing duty to update her bankruptcy schedules, which she did not do, helps satisfy the first element of judicial estoppel that Adams has taken inconsistent positions. Next, the bankruptcy court accepting the original bankruptcy schedules and then discharging Adams under the original schedules without the lawsuit listed satisfies the second element of judicial estoppel that a court accepted Adams's previous position. Additionally, Adams's attempt to amend her bankruptcy schedules after Graceland filed the motion for summary judgment does not cure the fact that the bankruptcy court relied on her position. "Allowing the debtor to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them." ***Love v. Tyson Foods Inc.***, 677 F.3d 258, 262 (5th Cir. 2012) (citation omitted). The final element is whether Adams did not inadvertently take the inconsistent positions. As the circuit court explained in its judgment, Adams certainly had "knowledge of the facts supporting her cause of action prior to the discharge of her Chapter 13 proceeding." Further, it is obvious that Adams had a motive to conceal the claim, as she is the sole beneficiary of her suit and her mother's estate. See ***id.*** ("'[T]he motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure.' Similarly, this court has found that debtors had a motivation to conceal where they stood to 'reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors.'") (Internal citations omitted.)

*Adams*, 208 So. 3d at 580-82 (¶¶ 16-17) (emphasis added).  The above-quoted paragraphs make crystal clear that all of the facts mattered to the *Adams* Court's analysis and holding.  The same is true of our earlier cases of *Gibson*, 186 So. 3d at 846-47 (¶¶ 24-30), in which we reviewed the facts and held the doctrine of judicial estoppel did not apply, and *Kirk*, 973 So. 2d at 991-92 (¶¶ 36-38), in which the Court did apply the doctrine.

¶56.    In today's case, the majority reverses the trial judge for doing exactly what our judicial-estoppel cases, including the concurring opinion from *Jones*, require—considering all of the facts and applying them to the three elements of judicial estoppel.  The majority singles out two inferences that it considers to be errors of law.

¶57.    First, that the trial court inferred "because Saunders had knowledge of the facts giving rise to the later-filed claims against the NCAA, he had knowledge of the claims themselves." Maj. Op. ¶ 25.  As discussed above, the trial judge did not need to infer Saunders's knowledge of a potential claim; direct evidence of such can be found in the record.  Again, in *Jones*, we reaffirmed that, "A debtor's non disclosure is inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment."  *Jones*, 337 So. 3d at 107 (¶ 34)( internal quotation marks omitted) (quoting *Kirk*, 973 So. 2d at 991 (¶ 35)).  The record is crystal clear that Saunders had knowledge not just of the facts giving rise to his claim but the potential claims themselves at several stages of the lead- up to and during litigation, but he chose not to report them to the  bankruptcy court.  Moreover, if the majority faults the trial judge for drawing inferences from the evidence with which the majority disagrees, then the majority should be doing so under the

24

abuse of discretion standard applicable to questions of fact rather than the *de novo* standard it employs as it mischaracterizes the issue as one of law.

¶58.    The second inference the majority holds runs afoul of the ***Jones*** concurring opinion is that because Saunders did not disclose his claim on his bankruptcy schedule, his motive was evident.  Maj. Op. ¶ 25.  Once again, in ***Jones***, the Court reaffirmed that a bankruptcy debtor's motive for not reporting a potential claim to the bankruptcy court is to be able to keep the proceeds from the claim if he is not caught.  ***Jones***, 337 So. 3d at 1068 (¶ 19) ("If a debtor does not disclose his claim, he can keep the net proceeds of any settlement or judgment rather than pay his debts to creditors who are not repaid in full under terms of bankruptcy plan." (internal quotation marks omitted) (quoting ***Jackson v. Harris***, 303 So. 3d 454, 459 (¶ 17) (Miss. Ct. App. 2020))).  The majority's conclusion that the trial judge's finding as to motive constitutes an error of law is not only unsupported by the concurring opinion in ***Jones***, but it also is wholly contradicted by the majority opinion.

¶59.    To briefly return to a thread from above, the majority's own choice of word when it characterizes the trial judge's presumed errors as inferences belies the holding that they could be errors of law.  Whether an inference drawn from evidence is reasonable or unreasonable presents a question of fact.

> Fact-finding, which includes all material inferences and deductions which may be reasonably and logically drawn from the relevant direct facts, is a province which belongs to the jury, to be exercised by them according to the everyday experience and common observation of the twelve . . . constituting the jury—not by any one . . . judge or juror.

***Marsh v. Home Ins. Co.***, 484 So. 2d 1037, 1038 (Miss. 1986) (alterations in original)

(quoting *Mobile and O.R. Co. v. Cox*, 153 Miss. 597, 598-99, 121 So. 292 (Miss. 1929)). The majority goes astray in characterizing the inferences made by the trial judge as errors of law and reversing them as such.

¶60.     The trial judge stated that, in the instant case, Saunders's motive was self-evident. In doing so, he did not err as a matter of law by considering an improper presumption.

> In a civil case, unless a Mississippi statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally.

Miss. R. Evid. 301. Instead, he followed our precedent in which we were considering, under an abuse-of-discretion standard, whether a lower court erred in its application of underlying facts to law. Context matters. In *Jones*, we wrote the above-quoted language addressing motive not as pronouncements of law but in the process of addressing the facts of the case and whether the trial court abused its discretion by applying judicial estoppel. *Jones*, 337 So. 3d at 1068 (¶ 19). In *Adams*, we wrote that motivation in that case and others involving failure to report claims in bankruptcy proceedings was self-evident not as a pronouncement of law but, rather, as support for our holding that, based on the facts, the trial court did not abuse its discretion. *Adams*, 208 So. 3d at 580-81 (¶ 16). The majority errs by reversing the trial judge for relying on our treatment of the facts in *Adams*, which was reaffirmed in *Jones*, as errors of law. It is self-evident that a bankruptcy debtor has motive to conceal assets from the bankruptcy estate. To so state is correct as a statement on the facts—not the law. The trial judge considered all of the facts and circumstances, and no basis can be found to hold that he erred in fact or in law.

26

¶61. The trial judge committed no errors of law in today's case. Each of the trial court's findings that the majority decries as errors of law are supported by our opinion in *Jones*, not to mention our earlier decisions in *Adams* and *Kirk* that remain good law. The majority opinion criticizes the trial judge for doing nothing more than making reasonable inferences from the evidence before him; such inferences should be reviewed for abuse of discretion rather than *de novo* as questions of law. Finally, the record flatly refutes the majority's insistence that the trial judge erred as a matter of law—even if an error of law it would be—by failing to consider the totality of the circumstances; he very clearly did.

**GRIFFIS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶62. When a court considers judicial estoppel, we must acknowledge that "judicial estoppel 'is an equitable doctrine invoked by a court at its discretion[.]'" *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). "[I]ts purpose is 'to protect the integrity of the judicial process,' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment[.]'" *Id.* at 749-50 (citations omitted). The United States Supreme Court clearly stated that in considering judicial estoppel, "we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id.*

¶63. This case is unlike any previously considered by this Court. We must examine the

facts as they existed when this matter was considered by the trial court.

¶64. Here, when the trial court heard and considered the summary judgment motion, Sherry F. Chancellor, as the trustee for the bankruptcy case of David Saunders, had intervened in this case and was standing before the court as a proper party plaintiff. The United States Bankruptcy Court for the Northern District of Florida, Pensacola Division, Cause No. 18-30190-KKS, had reopened Saunders's bankruptcy case, allowed his bankruptcy schedules to be amended, and authorized the bankruptcy trustee to pursue and participate in this case. Thus, when the trial judge ruled on the summary-judgment motion on the issue of judicial estoppel, Saunders and the bankruptcy trustee were plaintiffs in this case.

¶65. When we examine all of the prior decisions of this Court, we will not find a similar case in which the bankruptcy trustee was before the court as a party plaintiff. *See, e.g.*, *Jones v. Alcorn State Univ.*, 337 So. 3d 1062 (Miss. 2022); *Jourdan River Ests., LLC v. Favre*, 278 So. 3d 1135 (Miss. 2019); *Adams v. Graceland Care Ctr. of Oxford, LLC*, 208 So. 3d 575 (Miss. 2017); *Gibson v. Williams, Williams & Montgomery, P.A.*, 186 So. 3d 836 (Miss. 2016), *Clark v. Neese*, 131 So. 3d 556, 558 (Miss. 2013); *Copiah Cnty. v. Oliver*, 51 So. 3d 205 (Miss. 2011); *Kirk v. Pope*, 973 So. 2d 981 (Miss. 2007). The fact that the bankruptcy trustee has intervened and is before the Mississippi courts, with the blessing and specific authority of the Florida bankruptcy court, distinguishes this case from the rest.

¶66. For example, in *Copiah County v. Oliver*, 51 So. 3d 205, 206 (Miss. 2011), this Court considered a similar question:

> The only question presented in this appeal is this Court considered whether Oliver should be judicially estopped from pursuing her personal-injury claim

against Copiah County for failing to amend her schedule of assets in the bankruptcy court to show the existence of the cause of action, even though the claim arose post-petition and post-confirmation.

*Oliver*, 51 So. 3d at 207. The Court ruled:

> To decide if judicial estoppel applies to Oliver's suit against Copiah County, it must be determined whether she had a duty to disclose to the bankruptcy court her post-petition, post-confirmation claim. *We believe our most prudent course is to allow the bankruptcy court to decide this question and to stay further proceedings until it has had an opportunity to do so. This course ensures that the present action is prosecuted in the name of the real party in interest.*

*Id.* (emphasis added). This Court thought it important to consider the bankruptcy court in the decision of whether to apply judicial estoppel and clearly stated the purpose was to "ensure[]that the present action is prosecuted in the name of the real party in interest." *Id.*

¶67. Here, the bankruptcy court clearly expressed its decision to allow this case against the National Collegiate Athletic Association (NCAA) to proceed. As of the date of the trial court hearing, Saunders's bankruptcy schedules were amended[6] and correct, the bankruptcy trustee had intervened,[7] the creditors in bankruptcy were protected, and both the bankruptcy judge and the bankruptcy trustee had authorized the pursuit of damages from the NCAA in this Mississippi case. All of this was known to and authorized by the trial court. Indeed, this

---

[6] Federal Rule of Civil Procedure 15(a)(2) (emphasis added) provides that a court "should *freely give* leave when justice so requires." Federal Rule of Bankruptcy 1009(a) provides that "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." The Florida bankruptcy court approved the amended schedules.

[7] The circuit court allowed the bankruptcy trustee to intervene and to file an amended complaint. Mississippi Rule of Civil Procedure 15 (emphasis added) provides that "leave to amend shall be *freely given* when justice so requires."

case is being "prosecuted in the name of the real party in interest," which was the Court's concern in *Oliver*. *Oliver*, 51 So. 3d at 207.

¶68. I would reverse and render the trial court's grant of summary judgment on the ground of judicial estoppel. My decision is based on *Oliver*. The bankruptcy trustee is before the court *asking* the court to proceed. The United States Supreme Court warned us that "judicial estoppel 'is an equitable doctrine invoked by a court at its discretion,'" *New Hampshire*, 532 U.S. at 750 (internal quotation marks omitted) (quoting *Russell*, 532 U.S. at 750), that we must be careful to "not establish *inflexible prerequisites* or *an exhaustive formula* for determining the applicability of judicial estoppel[,]" *id.* at 751, and "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id.*

¶69. Such is the case here; it is abundantly clear that the Florida bankruptcy court is not concerned that it has been misled or that judicial estoppel should be invoked to dismiss Saunders's claims. Indeed, Saunders's effort to reopen his bankruptcy case, to amend his schedules, and to get approval and authorization of both the Florida bankruptcy court and the bankruptcy trustee clearly indicate that there is no inconsistent or deliberately changed position that necessitate this Court's application of judicial estoppel to protect the judicial process. This Mississippi case now has the blessing and the authority of the Florida bankruptcy court.

¶70. In *Jones*, the bankruptcy court adopted Jones's modified plan, which included a provision that stated "[i]n the event that Debtor receives any proceeds from the lawsuit . . . , the funds will be turned over to the trustee for the benefit of the unsecured creditors over

30

and above what is being paid to unsecured creditors." ***Jones***, 337 So. 3d at 1068. Jones's bankruptcy trustee, however, chose not to pursue the claims for the benefit of the bankruptcy estate. ***Id.*** In fact, Jones's trustee took no action to intervene or to be substituted for the plaintiff in the circuit court. Unlike in ***Jones***, Saunders's bankruptcy trustee moved to intervene and to file an amended complaint. As a result, here, as ***Oliver*** instructs, this litigation will be prosecuted in the name of the real parties in interest—Saunders and the bankruptcy trustee.

¶71. I conclude that any concern a Mississippi court may have to protect a Florida bankruptcy court has been alleviated by the Florida bankruptcy court's express decision to authorize and sanction the pursuit of Saunders's claims against the NCAA and the bankruptcy trustee's substitution, intervention, or joinder in this case. There is simply no just reason to invoke judicial estoppel.

¶72. I concur in part because I also agree with Justice Maxwell that the review of "the application of judicial estoppel inadvertence element is a fact-specific inquiry that *must* take into account the totality of the circumstances—including how the bankruptcy court has dealt with the omission." Maj. Op. ¶ 3. I am of the opinion, however, that no further review or consideration of judicial estoppel is required on remand. I would reverse, render judgment on the issue of judicial estoppel, and remand for further proceedings.

31